UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust,<br><br>Plaintiff,<br><br>v.<br><br>BMO Harris Bank N.A., as successor to M&I Marshall and Ilsley Bank,<br><br>Defendant. | Case No. 19-cv-1756 (WMW)<br><br>**ORDER** |

---

| | |
|---|---|
| BMO Harris Bank N.A., as Successor to M&I Marshall and Ilsley Bank,<br><br>Appellant,<br><br>v.<br><br>Douglas A Kelley,<br><br>Appellee. | Case No. 19-cv-1826 (WMW)<br><br>**ORDER** |

---

| | |
|---|---|
| BMO Harris Bank N.A., as Successor to M&I Marshall and Ilsley Bank,<br><br>Appellant,<br><br>v.<br><br>Douglas A Kelley, in his capacity as the Trustee of BMO Litigation Trust,<br><br>Appellee. | Case No. 19-cv-1869 (WMW)<br><br>**ORDER** |

In these related bankruptcy matters, Appellant-Defendant BMO Harris Bank N.A. (BMO Harris) moves for leave to file an interlocutory appeal of the June 27, 2019 Order of the United States Bankruptcy Court for the District of Minnesota, which denied BMO Harris's motion for summary judgment. (Case No. 19-cv-1826, Dkt. 2-6.) BMO Harris also moves to stay the bankruptcy proceedings and for an order accepting a document under seal. (Case No. 19-cv-1756, Dkt. 41; Case No. 19-cv-1826, Dkt. 19; Case No. 19-cv-1869, Dkt. 3.) Plaintiff-Appellee Douglas A. Kelley, in his capacity as the Trustee of the BMO Litigation Trust (the Trustee), opposes each of BMO Harris's motions. For the reasons addressed below, BMO Harris's motions are denied.

## BACKGROUND

These matters arise from a Ponzi scheme orchestrated by Thomas J. Petters and his associates between 1994 and 2008. Petters was the owner, director, and CEO of Petters Company, Inc. (PCI). During the course of the Ponzi scheme, PCI obtained billions of dollars from investors through fraud, false pretenses, and misrepresentations about PCI's purported business. Billions of dollars were wired into and out of PCI's depository account at National City Bank, which was acquired by M&I Marshall and Ilsley Bank (M&I) in July 2001. BMO Harris is the successor to M&I, and the claims at issue in these bankruptcy matters pertain to M&I's handling of PCI's account.

Plaintiff-Appellee Douglas A. Kelley was appointed as the equity receiver for PCI on October 6, 2008. *See In re Petters Co.*, 401 B.R. 391, 398 (D. Minn. Bankr. 2009). Kelley filed for Chapter 11 bankruptcy relief on behalf of PCI and was appointed as the Chapter 11 Trustee. *Id.* at 414. The bankruptcy court confirmed PCI's Second Amended

Plan of Chapter 11 Liquidation, which transferred certain assets, including the causes of action at issue here, to the BMO Litigation Trust.

The Trustee subsequently filed a complaint alleging that BMO Harris was complicit in the Ponzi scheme through its dealings with Petters, PCI, and PCI's account. The complaint alleges that BMO Harris failed to respond to irregularities as required by banking regulations that, together with other acts and omissions, legitimized and facilitated the Ponzi scheme. The bankruptcy court granted in part and denied in part BMO Harris's motion to dismiss on February 24, 2017. *In re Petters Co.*, 565 B.R. 154 (D. Minn. Bankr. 2017). Four claims remain: Count I alleges that BMO Harris violated the Minnesota Uniform Fiduciaries Act, Count II alleges that BMO Harris breached fiduciary duties it owed to PCI, Count III alleges that BMO Harris aided and abetted fraud against PCI, and Count IV alleges that BMO Harris aided and abetted the breach of fiduciary duties owed to PCI. *See id.*

BMO Harris moved for summary judgment on the remaining four claims, arguing that the Trustee lacked standing and that BMO Harris's *in pari delicto* defense precludes the Trustee from recovery. The bankruptcy court denied BMO Harris's motion for summary judgment on both grounds. BMO Harris now moves for leave to file an interlocutory appeal of the bankruptcy court's summary judgment order.

### ANALYSIS

**I.     BMO Harris's Motion for Leave to Appeal**

BMO Harris seeks this Court's leave to appeal the bankruptcy court's June 27, 2019 Order, which denied BMO Harris's motion for summary judgment. When a

bankruptcy court's order is not a final order, a party may file an interlocutory appeal to the district court only "with leave of the court." 28 U.S.C. § 158(a)(3). A district court's decision to grant or deny a motion for leave to appeal an interlocutory bankruptcy order "is purely discretionary." *In re M & S Grading, Inc.*, 526 F.3d 363, 371 (8th Cir. 2008). "Such leave, however, should be sparingly granted and only in exceptional cases." *In re Arch Coal, Inc.*, 592 B.R. 853, 856 (B.A.P. 8th Cir. 2018). The party seeking interlocutory appeal "must demonstrate that exceptional circumstances exist, not merely that the issue is hard, unique, or the case is difficult." *In re Nat'l Metalcraft Corp.*, 211 B.R. 905, 906 (B.A.P. 8th Cir. 1997) (internal citation omitted). When deciding whether to grant leave to appeal, courts consider whether refusal to do so would result in wasted litigation and expense, whether the appeal involves a controlling question of law for which there is a substantial basis for difference of opinion, and whether an immediate appeal would materially advance the ultimate termination of the litigation. *Id.*; *accord In re Arch Coal*, 592 B.R. at 856.

BMO Harris argues that the foregoing considerations warrant granting its motion for leave to appeal the bankruptcy court's June 27, 2019 Order because the bankruptcy court's rulings as to standing and BMO Harris's *in pari delicto* defense depart from established law and reversal of those rulings would terminate or substantially narrow this litigation. The Trustee counters that the bankruptcy court's rulings do not involve questions of law for which there is a substantial basis for differing opinion as the rulings are based on well-settled law and, in part, on disputed material facts. The Court addresses each bankruptcy court ruling in turn.

A.  Standing

The bankruptcy court rejected BMO Harris's standing arguments, concluding that the Trustee's claims against BMO Harris belong to the bankruptcy estate under Minnesota law because the claims involve direct harm to the debtor and only indirect harm to the creditors. BMO Harris argues that there are substantial grounds for a difference of opinion as to this conclusion.

It is a bankruptcy trustee's duty to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(a)(1). The property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Because a cause of action is an interest in property that is included in an estate, a bankruptcy trustee has authority under Section 704(a)(1) "to assert causes of action that belonged to the debtor at the time of filing bankruptcy."[1] *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). State law governs "[w]hether a particular cause of action arising under state law belonged to the debtor in bankruptcy or to someone else." *Id.*

---

[1] Although many cases addressing this issue refer to the trustee's "standing" to pursue such claims, several courts have observed that this is a misnomer because the issue pertains to the trustee's *statutory authority* to pursue the claim—not the *justiciability* of the claim. *See, e.g.*, *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010) (explaining that the Supreme Court of the United States used the phrase "lacks standing" in this context to refer to statutory authorization as opposed to justiciability (citing *Caplin v. Marine Midland Grace Tr. Co.*, 406 U.S. 416 (1972))); *Greenpond S., LLC v. Gen. Elec. Capital Corp.*, 886 N.W.2d 649, 654–55 (Minn. Ct. App. 2016) (adopting the reasoning of the Seventh Circuit in *Grede* that this issue involves statutory authority as opposed to justiciability). While the Court is mindful of this distinction, the distinction has no apparent material impact on the analysis that follows.

Applying these legal standards, the bankruptcy court concluded that Minnesota law permits a corporation to bring claims involving direct harm to the corporation and that the fraudulent depletion of corporate assets that results in the inability to repay creditors is a direct harm to the corporation. The bankruptcy court also concluded that, under Minnesota law, when harm to a corporation only *indirectly* harms all similarly situated creditors, the creditors' derivative claims arising from the indirect harm belong to the corporation that was directly harmed. But a corporation cannot bring claims that belong *solely* to the creditor, the bankruptcy court concluded. The bankruptcy court concluded that the claims brought by the Trustee in this case belong to the estate because the claims involve direct harm to PCI and they are merely derivative claims of PCI's similarly situated creditors that were indirectly harmed. As such, the bankruptcy court denied BMO Harris's motion for summary judgment as to this issue.

In seeking leave to file an interlocutory appeal, BMO Harris argues there are substantial grounds for a difference of opinion as to the bankruptcy court's foregoing legal conclusions. A substantial ground for a difference of opinion exists when there are "a sufficient number of conflicting and contradictory opinions." *Union County v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) (quoting *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994)). BMO Harris offers several arguments in support of its position.

BMO Harris first contends that the Trustee cannot recover "creditor losses labeled as amounts the debtor is unable to repay." According to BMO Harris, the bankruptcy court's decision improperly recharacterizes creditor losses as harm to PCI. But when a corporation's assets are fraudulently depleted, rendering the corporation unable to repay

creditors, it is the corporation—not the creditors—that is directly harmed, and the claim belongs to the bankruptcy estate. *See Senior Cottages*, 482 F.3d at 1006; *accord Greenpond S., LLC v. Gen. Elec. Capital Corp.*, 886 N.W.2d 649, 657 (Minn. Ct. App. 2016) (observing that "the harm sustained by the Petters entities as a result of fraudulent withdrawals from their accounts of other lenders' funds was its insolvency and inability to repay its creditors"). "Simply because the creditors of an estate may be the primary or even the only beneficiaries of [the estate's] recovery does not transform the action into a suit by the creditors" because, if that were the case, a bankruptcy trustee could *never* pursue claims on behalf of an estate that has insufficient funds to pay all creditors. *Senior Cottages*, 482 F.3d at 1006 (quoting *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 348–49 (3d Cir. 2001)). The fact that fraudulent dissipation of corporate assets limits a corporation's ability to repay its debts "is not . . . a concession that only the creditors, and not [the corporation] itself, have sustained any injury." *Id.* (quoting *Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1004 (9th Cir. 2005)). Instead, this consequence reflects "the economic reality that any injury to an insolvent firm is necessarily felt by its creditors." *Id.* (quoting *Smith*, 421 F.3d at 1004).

BMO Harris argues that the underlying bankruptcy court and district court decisions in *Senior Cottages* support its position.[2] But this argument lacks merit. In *Senior Cottages*, the bankruptcy court concluded that a trustee must allege "a specific

---

[2] In *Senior Cottages*, the Eighth Circuit reviewed the district court's affirmance of the bankruptcy court's decision denying the trustee leave to amend the complaint. *See id.* at 999. In support of its arguments, BMO Harris relies on the bankruptcy court and district court decisions in *Senior Cottages*.

7

injury to [the debtor] itself" as opposed to "an injury to the individual interests of creditors of [the debtor]." *In re Senior Cottages of Am., LLC*, 320 B.R. 895, 900–02 (Bankr. D. Minn. 2005). The bankruptcy court found that the trustee's complaint failed to do so because the debtor was "no more than a vehicle for a recovery to benefit creditors" for their losses. *Id.* at 901. The district court affirmed and observed that the trustee's proposed amended complaint merely "re-cast the injuries set out in the initial Complaint as belonging to Debtor" by removing references to the creditors and alleging that the debtor "was deprived of capital." *In re Senior Cottages of Am., LLC*, No. 05-809, 2005 WL 2000185, at *3 (D. Minn. Aug. 18, 2005). But the Eighth Circuit disagreed. As relevant here, the Eighth Circuit concluded that the proposed amended complaint alleged harm to the debtor, not the creditors. *Senior Cottages*, 482 F.3d at 1006. In doing so, the Eighth Circuit held that the trustee of a bankruptcy estate is the proper party to assert claims that indirectly harm creditors, rejecting the defendants' argument that "a cause of action for harm to an insolvent corporation belongs to the creditors rather than the corporation itself" merely because the creditors will benefit from the recovery. *Id.* (citing *Smith*, 421 F.3d at 1004, and *Lafferty*, 267 F.3d at 348–49). The Eighth Circuit's holding in *Senior Cottages* controls here, notwithstanding any contrary or inconsistent holdings in the underlying bankruptcy court and district court decisions.[3]

---

[3] The Eighth Circuit's rejection of the relevant underlying holdings does not demonstrate a contradiction or inconsistency in the governing law. To the contrary, the Eighth Circuit's decision settles the issue. It would make little sense if a litigant could establish an inconsistency or contradiction in legal authority by relying on decisions that have been reversed by a reviewing court.

8

In challenging the bankruptcy court's application of *Senior Cottages* here, BMO Harris also relies on appellate court decisions from other jurisdictions. But case law from other circuits has limited relevance to the bankruptcy court's application of binding Eighth Circuit precedent here. BMO Harris has not identified *any* conflicting or contradictory opinions *within* the Eighth Circuit. Moreover, the appellate decisions on which BMO Harris relies are *not* inconsistent with the Eighth Circuit's decision in *Senior Cottages*, and those decisions are inapposite here. The sufficiency of the plaintiffs' proof of damages was at issue in those cases, not whether the claims belong to the creditors instead of the debtor or the bankruptcy estate. *See In re Latitude Sols., Inc.*, 922 F.3d 690, 695–97 (5th Cir. 2019); *Melamed v. Lake Cty. Nat'l Bank*, 727 F.2d 1399, 1404 (6th Cir. 1984). BMO Harris's reliance on *Latitude* and *Melamed* is misplaced.

BMO Harris also relies on district court and bankruptcy court decisions from other circuits. These decisions—most of which predate *Senior Cottages—*also have limited relevance to the bankruptcy court's application of binding Eighth Circuit precedent here. Notably, BMO Harris relies on several decisions that are based on the Second Circuit's "*Wagoner* rule." *See, e.g.*, *In re Agape World, Inc.*, 467 B.R. 556, 574–77 (Bankr. E.D.N.Y. 2012); *In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 257 (Bankr. N.D. Fla. 2003). But the Eighth Circuit's *Senior Cottages* decision expressly rejects the *Wagoner* rule. 482 F.3d at 1002–04. Moreover, to the extent that these decisions hold, expressly or implicitly, that a claim arising from a direct injury to a creditor does not belong to the debtor's bankruptcy estate, those decisions are not inconsistent with *Senior Cottages* or the bankruptcy court's decision here. The bankruptcy court in this case acknowledged

that a trustee "cannot bring direct claims that belong solely to a creditor." But, consistent with the holding in *Senior Cottages*, the bankruptcy court concluded that the Trustee's claims in this case do not arise from direct harm to PCI's creditors. Instead, the Trustee's claims arise from a direct harm to PCI—namely, the fraudulent depletion of PCI's assets, which involve only *indirect* harm to PCI's creditors.[4]

BMO Harris also contends that the bankruptcy court's ruling as to creditor "derivative" claims is contrary to law. To be sure, if a claim "belongs" to a creditor rather than the debtor, a bankruptcy trustee cannot bring such a claim "on behalf of" the creditor. *See In re Ozark Restaurant Equip. Co.*, 816 F.2d 1222, 1224–26 (8th Cir. 1987). But the bankruptcy court's decision here does not contradict that legal principle. The bankruptcy court concluded that the Trustee's claims do not "belong" to PCI's creditors, but rather those claims belong to PCI, the debtor.

A creditor's claims are "derivative," and thus belong to the debtor rather than the creditors, if they involve harm to the debtor that only incidentally harmed creditors. *Greenpond*, 886 N.W.2d at 655–57. As such, a creditor's derivative claims "belong exclusively to the bankruptcy estate" and "the trustee is the proper person to assert the

---

[4] BMO Harris persists in arguing that a bankruptcy trustee cannot bring claims that belong to a creditor. This is a correct statement of the law. But the bankruptcy court did not hold to the contrary. Rather, the bankruptcy court held that the Trustee's claims in this case *do not belong to the creditors*. This holding is consistent with the Eighth Circuit's decision in *Senior Cottages*. BMO Harris's disagreement with the bankruptcy court's application of settled Eighth Circuit law does not demonstrate a contradiction or inconsistency in the state of the law, which is required to obtain leave for interlocutory appeal.

claim."[5] *Id.* at 655 (internal quotation marks omitted). Whether a claim is direct or derivative depends on "whether the injury harmed the stakeholder directly or the corporation." *Id.* at 657. A creditor's claim is derivative if the creditor's injury is "inseparable from and based upon an injury suffered by the [debtor]." *Id.* Here, the bankruptcy court concluded that the Trustee's claims are "derivative" vis-à-vis the creditors because the Trustee's claims involve direct harm to PCI but only incidental harm to PCI's creditors resulting from their status as creditors. This conclusion is consistent with governing law. *See, e.g.*, *id.*; *cf. In re Medtronic, Inc. Shareholder Litig.*, 900 N.W.2d 401, 406-11 (Minn. 2017) (explaining that a "derivative claim" involves harm to the corporation whereas a "direct claim" does not). As such, the *Ozark* and *Medtronic* decisions on which BMO Harris relies are inapposite. They do not demonstrate the existence of substantial grounds for a difference of opinion on this issue.

In short, BMO Harris has not identified any opinion within the Eighth Circuit that conflicts with or contradicts the bankruptcy court's rulings on these issues. And the decisions from other jurisdictions on which BMO Harris relies do not demonstrate that conflicting and contradictory opinions exist *outside* the Eighth Circuit. BMO Harris has not established substantial grounds for a difference of opinion as to the bankruptcy court's legal conclusions pertaining to the Trustee's authority to pursue the claims

---

[5] Although courts sometimes refer to such claims as being brought "on behalf of" creditors, that reference does not mean those claims belong to the creditors. Rather, such claims belong to the debtor but are asserted "on behalf of" the creditors because the creditors also may recover as an incidental result of the debtor's recovery. *See Greenpond*, 886 N.W.2d at 655–57.

11

asserted in this case. Accordingly, BMO Harris's motion for leave to file an interlocutory appeal of this aspect of the bankruptcy court's summary judgment order is denied.

B.  *In Pari Delicto* Defense

The bankruptcy court also denied BMO Harris's motion for summary judgment as to BMO Harris's *in pari delicto* defense. The bankruptcy court ruled that this defense is inapplicable in light of PCI's status as a receivership entity when it filed for bankruptcy and, alternatively, genuine disputes of material fact preclude summary judgment as to this defense. BMO Harris maintains there are substantial grounds for a difference of opinion as to these rulings. The Court is unpersuaded.

"A trustee's ability to assert causes of action on behalf of the bankrupt estate is subject to any equitable or legal defenses that could have been raised against the debtor." *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 836 (8th Cir. 2005). "In particular, the equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor." *Id.* State law governs whether this equitable defense may be asserted in a particular case. *Id.* at 837.

Under Minnesota law, *in pari delicto* provides a complete defense when the plaintiff "bears at least substantially equal responsibility for the injury it seeks to remedy." *Christians v. Grant Thornton, LLP*, 733 N.W.2d 803, 814–15 (Minn. Ct. App. 2007) (internal quotation marks omitted); *see also Head v. AAMCO Automatic Transmissions, Inc.*, 199 N.W.2d 444, 448 (Minn. 1972) (explaining that *in pari delicto* applies when plaintiff's wrongdoing is "no less than" defendant's wrongdoing). Absent a

12

legal or factual error, Minnesota courts have discretion when applying equitable defenses. *City of North Oaks v. Sarpal*, 797 N.W.2d 18, 24–25 (Minn. 2011).

The *in pari delicto* defense rests on the "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." *Grassmueck*, 402 F.3d at 837 (quoting Black's Law Dictionary 806 (8th ed. 2004)). But "when a receiver has been appointed for a corporation, the wrongdoer (the corporation) is removed from the picture and, hence, *in pari delicto* does not apply." *Kelley v. Coll. of St. Benedict*, 901 F. Supp. 2d 1123, 1129 (D. Minn. 2012) (citing *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 1995)); *accord Zayed v. Associated Bank, N.A.*, No. 13-232, 2015 WL 4635789, at *3 (D. Minn. Aug. 4, 2015); *Zayed v. Buysse*, No. 11-cv-1042, 2012 WL 12893882, at *42 (D. Minn. Sept. 27, 2012). This determination is consistent with Minnesota's application of equitable defenses in the context of receiverships:

> While the general rule undoubtedly is that the receiver of an insolvent corporation has no greater rights than those possessed by the corporation itself and a defendant in a suit brought by [the receiver] may take advantage of any defense that might have been made if the suit had been brought by the corporation before its insolvency, it is equally true that when an act has been done in fraud of the rights of the creditors of the insolvent corporation the receiver may sue for their benefit, even though the defense set up might be valid as against the corporation itself.

*German-Am. Fin. Corp. v. Merchants & Mfrs. State Bank of Minneapolis*, 225 N.W. 891, 893 (Minn. 1929); *accord Magnusson v. Am. Allied Ins. Co.*, 189 N.W.2d 28, 33 (Minn. 1971) (holding that, even if an equitable defense would be available against an insolvent debtor, "it cannot constitute a defense against the receiver" because a "receiver represents

13

the rights of creditors and is not bound by the fraudulent acts of a former officer of the corporation"); *see also Bonhiver v. Graff*, 248 N.W.2d 291, 296–97 (Minn. 1976).

BMO Harris does not cite, nor is this Court aware of, any Minnesota or Eighth Circuit legal authority to the contrary. A "substantial ground for difference of opinion does not exist merely because there is a dearth of cases." *White*, 43 F.3d at 378. Moreover, the cases from other jurisdictions on which BMO Harris relies are inapposite because none of those cases involves an *in pari delicto* defense asserted against a receivership entity under Minnesota law. Nor does BMO Harris's reliance on provisions of the bankruptcy code—repealed or otherwise—demonstrate substantial grounds for a difference of opinion because the bankruptcy code provisions that BMO Harris cites have no apparent bearing on the application of an *in pari delicto* defense to a receivership entity under Minnesota law.

In short, BMO Harris has not demonstrated the existence of substantial grounds for a difference of opinion as to the bankruptcy court's legal conclusions pertaining to the *in pari delicto* defense.[6] Accordingly, BMO Harris's motion for leave to file an interlocutory appeal of this aspect of the bankruptcy court's summary judgment order is denied.

---

[6] BMO Harris also disputes the bankruptcy court's conclusion, in the alternative, that if the *in pari delicto* defense applies, genuine disputes of material fact preclude summary judgment on the issue. Because discretionary review of interlocutory bankruptcy orders "requires the presence of a controlling question of law, if the bankruptcy court's order is fact intensive, review is not proper under 28 U.S.C. § 158(a)(3)." *In re Gilbertson Restaurants, LLC*, 315 B.R. 845, 849 (B.A.P. 8th Cir. 2004). Here, BMO Harris's disagreements with this aspect of the bankruptcy court's ruling do not warrant discretionary interlocutory review.

## II. BMO Harris's Motions to Accept a Document Under Seal and Stay Proceedings

BMO Harris also moves for an order accepting under seal a confidential exhibit that BMO Harris filed under seal in the bankruptcy proceedings and now seeks to rely on in the appeal of the bankruptcy court's summary judgment order. BMO Harris also seeks an order staying these proceedings pending BMO Harris's requested interlocutory appeal. In light of the Court's denial of BMO Harris's motion for leave to file an interlocutory appeal, BMO Harris's motions to accept a document under seal and to stay the proceedings are denied as moot.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Appellant-Defendant BMO Harris Bank N.A.'s motion for leave to file an interlocutory appeal, (Case No. 19-cv-1826, Dkt. 2-6), is **DENIED**.

2. Appellant-Defendant BMO Harris Bank N.A.'s motions to stay, (Case No. 19-cv-1756, Dkt. 41; Case No. 19-cv-1869, Dkt. 3), are **DENIED** as moot.

3. Appellant-Defendant BMO Harris Bank N.A.'s motion to accept sealed bankruptcy documents, (Case No. 19-cv-1826, Dkt. 19), is **DENIED** as moot.

Dated: March 13, 2020  s/Wilhelmina M. Wright  
Wilhelmina M. Wright  
United States District Judge